**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

R. ALEXANDER ACOSTA, SECRETARY
OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,

                 Plaintiff,

v.

AT HOME PERSONAL CARE SERVICES,
LLC, and ROBIN WRIGHT, Individually,

                 Defendants.

Civil No.: 1:18-cv-549 (LMB/IDD)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The Motion for Summary Judgment filed by the Plaintiff, R. Alexander Acosta, Secretary of Labor, U.S. Department of Labor's ("Plaintiff" or the "Secretary") should be granted because there is no genuine issue of material fact as to Defendants At Home Personal Care Services LLC ("AHP") and Robin Wright's ("Defendants") violations of the Fair Labor Standard Act ("FLSA" or "the Act") and the back wages and liquidated damages due as a result of Defendants' violations. The undisputed facts establish that Defendants violated Sections 7 and 11 of the FLSA. Defendants knowingly failed to pay their employees the overtime premium rate for all hours worked over 40 in a workweek between October 6, 2015 and October 1, 2017. As a result of their violations of Section 7, Defendants are liable for back wages for a two- year period totaling $67,519.29.

Defendants also are liable for liquidated damages under 29 U.S.C. § 216(c). When an employer is liable under the FLSA for failing to pay employees the overtime premium rate, a Court must award an equal amount of liquidated damages. *See Perez v. Mountaire Farms, Inc.*,

650 F.3d 350, 375 (4th Cir. 2011); *see also* 29 U.S.C. § 216(c). The sole exception to mandatory

liquidated damages is set forth in 29 U.S.C. § 260, which requires that an employer prove with

"plain and substantial" evidence that they took active steps to ascertain the dictates of the FLSA

and then moved to comply with them, and that there were reasonable grounds for believing they

were in compliance with the Act.  Defendants have failed to produce any evidence in support of

this burden. Further, Defendants concede they did not consult the Department of Labor or an

attorney to determine whether their compensation policies complied with the Act.

Between October 6, 2015 and September 17, 2016, Defendants also failed to maintain

records  reflecting (1) employees' total daily or weekly straight-time earnings and (2) the total

overtime pay for the workweek  in violation of Section 11(c) of the Act.

The Court also should grant Plaintiff's request for injunctive relief pursuant to Section 17 of

the Act due to Defendants' prior conduct and the likelihood that Defendants will continue to violate

the FLSA. Defendants failed to pay the overtime premium for over two years. Based on

Defendants' conduct prior to Wage and Hour's investigation, any assurances of future

compliance by Defendants would simply be unreliable.

Accordingly, and for reasons set forth in detail below, Plaintiff is entitled to judgment in

his favor on all issues as a matter of law and respectfully requests that his Motion for Summary

Judgment be granted in its entirety.

## I.    Undisputed Facts

The following facts apply to the period of October 6, 2015 through September 17, 2016,

the relevant period of investigation, and are not dispute:

1.        Jurisdiction of this action was conferred upon the Court by Sections 16(c) and

17 of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. §§ 216(c) and 217, and by 28

U.S.C. §§ 1331 and 1345. *See* Stipulations at ¶ 1, Exh. A.

2.      Since at least October 6, 2015, AHP has been a limited liability corporation with a place of business at 9218 Centreville Road, Manassas, VA 20110, and under the ownership of Robin Wright. *See* Stipulations at ¶ 2, Exh. A.

3.      Since at least October 6, 2015, Defendant AHP has provided home health care services to patients in their private residences, within the jurisdiction of this Court. *See* Stipulations at ¶3, Exh. A; Answers to Interrogatories No. 3, Exh. C; Robin Wright Dep. Transcript 201:2-5;  Exh.E.; Corp. Rep. Wright Dep. Transcript 19:8, Exh. F.

4.      Since at least October 6, 2015, AHP employees have handled goods and supplies from states other than Virginia, such as insurance documents, office and medical supplies. During that period, AHP employees also made and received calls and mail from out of state. *See* Stipulations at ¶ 4, Exh. A; Corp. Rep. Wright Dep. Transcript 33, Exh. F.

5.      Since at least October 6, 2015, Defendant Robin Wright has been the owner and president of AHP. As the owner and president, is actively involved in the day to day operations of the company, has the ability to hire and fire employees, assign work assignments, and set rates of pay accordingly. *See* Answers to Interrogatories No. 13, Exh. C; Robin Wright Dep. Transcript. 30:15-20, 185:3-8, 209:8-11 Exh. F.

6.      Since at least October 6, 2015, Defendant AHP's core business activities have been providing home health care services, for which AHP earns gross annual income of not less than $500,000.00 in furtherance of AHP's business objectives. *See* Stipulations at ¶ 4, Exh. A; Answers to Interrogatories Nos. 3 and 15, Exh. C; Corp.Rep. Wright Dep. Transcript 32, Exh. F; AHP Website Printout, Exh. B.

7.      Between October 6, 2015 and October 1, 2017, AHP retained two categories of

home health staff. One category included home health aides who AHP classified as employees and paid time and half for overtime hours worked. *See* Answers to Interrogatories Nos. 3, 4,5, 6, 8, Exh. C; Robin Wright Dep. Transcript 178, 179, Exh.E. The second category included home health aides who AHP classified as independent contractors, and paid straight time wages for overtime hours worked. *See* Answers to Interrogatories No. 1, Exh. C; Robin Wright Dep. Transcript 159:2-3, Exh. E. Although AHP assigned different classifications to these individuals, AHP treated independent contractors and employees the same during the relevant period.

8.      AHP assigned the two sets of home health aides the same work and required that both home health aides AHP classified as employees and home health aides AHP classified as independent contractors (collectively referred to as "home health aides") to provide activities of daily living ("ADL") services to consumer clients. *See* Answers to Interrogatories No. 3, Exh. C; Robin Wright Dep. Transcript 110:9-12, 149:14-18, Exh. E; Corp. Rep. Wright Dep. Transcript 225:18-21, 226:1-8, Exh. F.There were no differences in the job duties or tasks of the two sets of home health aides. *See* Robin Wright Dep. Transcript 110:9-12, Exh. E.

9.      Home health aides all reported to the same supervisor and were paid by the same payroll service, ADP. *See* Answers to Interrogatories No. 8, Exh. C; Robin Wright Dep. Transcript 179-180, Exh. E; Corp. Rep. Wright Dep. Tran 150:19-22, 151;1-4, Exh. F. AHP exercised the same level of control over the individuals listed in Schedule A, as they did over the individuals they admit are employees under the Act i.e., home health aides AHP classified as employees. *Id*.

10.      Between October 6, 2015 and October 1, 2017, Defendants allowed home health aides who AHP classified as employees to switch to an independent contractor classification. *See*

Answers to Interrogatories Nos. 1 and 4, Exh. C; Wright Dep. Transcript 111:19-22, 112: 4-17,168:3-6, Exh. E; Corp. Rep. Wright Dep. Transcript 223:6-22,224:1-9, Exh. F. These individuals continued to perform the same work they performed as AHP employees and AHP continued to exercise the same level of control over their work. *See* Wright Dep. Transcript 168:3-6;  Exh. E.

11.     AHP paid home health aides on an hourly basis and paid them the same hourly rate regardless of the individuals' classification, work performance, experience, or skill. *See* Employee Statements, Exh.H; Robin Wright Dep. Transcript 85:4-22, 100:21-22, 101:1-2, Exh. E. Home health aides classified as independent contractors, including those listed in Schedule A, did not negotiate different rates of compensation from other employees. *See* Answers to Interrogatories Nos. 1 and 4, Exh. C; Corp. Rep. Wright Dep. Transcript 70:20-21,71-72, Exh. F.

12.     AHP required the individuals classified as independent contractors to complete W-9s. Those forms require the individual completing the W-9 identify their business name. In the present case, home health aides classified as independent contractors, universally identified their business was "At Home Personal Care." *See* Answers to Interrogatories Nos. 1,3, and 12, Exh. C; W-9 Forms, Exh. G. None of the W-9s completed by employees listed in Schedule A identify any business name other than "At Home Personal Care." W-9 Forms, Exh. G.

13.   The individuals listed in Schedule A all worked as home health aides, at some point between October 6, 2015 and October 1, 2017. *See* Answers to Interrogatories Nos. 1,3, 6, and 12, Exh. C; Robin Wright Dep. Transcript 130:7-9, -131, Exh. E; Responses to Request for Admissions No.11, Exh. D.

14.   AHP advertised and recruited home health aides to be employees on Indeed, Craigslist, and other websites to provide nursing and personal care services to the firm's

consumers. *See* Robin Wright Dep. Transcript 82:19-22, Exh. E;  Governing Board Meeting Minutes, Exh. L.

16. Home health aides who applied to work for AHP all completed the same application, sat for an interview, consented to a background check, read AHP's orientation information and employee handbook, and completed a test of basic nursing knowledge. *See* Robin Wright Dep. Transcript 67: 3-5, 17-22, 68:1-8; Employee Statements, Exh. H.

16. AHP provided home health aides with an in-service document and training pertaining to various basic procedures. *See* Robin Wright Dep. Transcript 69:21-22, 70:1-22, 74: 10-22, 75: 1-22, Exh. E; Employee Handbook, Exh. K.

17. AHP requires the home health aides to follow their policy and procedures detailed in an Employee Handbook. *See* Corp. Rep. Wright Dep. Transcript 44:9-13,  Exh. F.

18. Patients typically came into contact with AHP via Medicaid, advertising on the internet and in newspapers, and advertising directed towards social workers and doctors. *See* Robin Wright Dep. Transcript 106: 12-16, 201,231, Exh. E. When a client contacted AHP seeking a home health aide placement, AHP generated a pool of home health aides (both those classified by AHP as employees and those classified an independent contractors) from a list of aides whose qualifications AHP determined best coincided with the needs of the patient.  *See* Answers to Interrogatories No. 1, 3, 8, 12, Exh. C; Responses to Request for Admissions No. 15, Exh. D; Robin Wright Dep. Transcript 180, 202-205, Exh. E. The Nursing Supervisor or Office Manager called the home health aide to inform him/her of the placement opportunity, including the hours and number of days of the placement. *See* Answers to Interrogatories No. 8, Exh. C; Robin Wright Dep. Transcript 202-205, Exh. E.

19. Each patient's needs and condition dictated which home health services aides

rendered. *See* Robin Wright Dep. Transcript 202-205, Exh. E. If a patient is unhappy with the home health aide, regardless of whether AHP classified him/her as an employee or independent contractor, the patient contacted AHP to replace the home health aide. *See* Answers to Interrogatories No. 3, Exh. C; Robin Wright Dep. Transcript 97:12-22. Exh. E.

20.     Home health aides AHP classified as independent contractors did not have any contractual or economic relationships with patients to whom they were placed to work through AHP. *See* Answers to Interrogatories Nos. 1, 3,8 and 12, Exh. C; Corp. Rep. Wright Dep. Tran. 65: 8-22, 79:8-15, Exh. F.

21.     Home health aides did not have contracts or arrangements with AHP setting the length of their relationship. *See* Robin Wright Dep. Transcript 98:5-19. Exh. E.

22.     When home health aides had schedule conflicts, AHP did not allow them to send another aide in his or her stead. Corp. Rep. Wright Dep. Transcript 62:9-22, 63:1-22, Exh. F.

23.     AHP paid all home health aides an hourly wage. *See* Answers to Interrogatories No. 4, Exh. C; Robin Wright Dep. Transcript 103:18-22. AHP determined the amount of each home health aide's hourly wage. *See* Robin Wright Dep. Transcript 100:17-22, 101:1-2, Exh. E. A home health aide could only increase his/her wages by working more hours. Employee Statements, Exh. H.

24.     Home health aides depended entirely on AHP to find job assignments and AHP, in turn, controlled the terms and conditions of the employment relationship. *See* Employee Statement, Exh. H; Employee Handbook, Exh. K. When home health aides cared for patients, AHP expected them to perform activities of daily living, each category being described with particularity in the daily timesheets issued by Defendants, and to note their findings on their daily timesheets. *See* Robin Wright Dep. Transcript 220:21-22, 221:1-2, 235:21-22,236:1-18,

Exh. E;  Sample Provider Aide Records, Exh. I).

25.     Defendants required home health aides, including Schedule A employees, to provide at least two weeks' notice of intent to take leave. *See* Robin Wright Dep. Transcript 103:18-22, 138:21-22,139:1-9, Exh. E; Employee Handbook, Exh.K.

26.     Home health aides had no investment in Defendants' business, they could not lose money providing services to AHP clients, did not purchase supplies for the business, and they could not profit beyond the hourly wage AHP paid. *See* Robin Wright Dep. Transcript 103:18-22, 138:21-22,139:1-9, Exh. E.

27.     The length of a home health aide's particular assignment depended primarily upon the patient's condition and varied from less than a week to several months. *See* Answers to Interrogatories Nos. 1 and 8, Exh. C; Robin Wright Dep. Transcript 222:11-17, Exh. E. However, when a home health aide's assignment ended, AHP typically assigned that aide to another client. *See* Robin Wright Dep. Transcript 222:11-17, Exh. E.

28.     AHP provided medical supplies and equipment to home health aides as needed by the worker or the client. *See* Robin Wright Dep. Transcript 97:19-21. No home health aide incurred any costs while providing health care services to AHP clients. *See* Corporate Representative Dep. Tran. 60:4-13, Exh. F.;  Employee Statements, Exh. H.

29.     AHP did not permit home health aides AHP to employ and/or have other individuals assist them in the performance of the service for which AHP compensated them. *See* Corporate Rep. Wright Dep. Transcript 63: 15-16, Exh. F.

30.     Home health aides provided non-skilled support services for activities of daily living ("ADLs"). *See* Corp. Rep.Wright Dep. Transcript 201:6, 204:15, Exh. F. These activities included bathing, dressing, feeding, light housekeeping, and errand running. *See* Robin Wright

Dep. Transcript 79:4-14, Exh.E.

31.     AHP supervised home health aides through visits to the job sites once or twice a month. *See* Answers to Interrogatories No. 8, Exh. C; Robin Wright Dep. Transcript 92-93,180:21-22, 181:11-11, Exh.E. AHP did not permit home health aides to assign their shift to others, absent AHP approval. *See* Corp. Rep. Wright Dep. Transcript 62:9-22, 63:1-22, Exh. F.

32.     AHP required home health aides to submit patient care notes. *See* Answers to Interrogatories Nos. 1, 3, 4, and 12, Exh. C; Governing Board Meeting Minutes, Exh. L;  Corp. Rep. Wright Dep. Transcript 130:13-16, Exh. F; Employee Statement, Exh. H. Such patient care notes also served as the daily timesheets reflecting the number of hours worked each day and tasks completed by home health aides. *See* Corp. Rep. Wright Dep. Transcript 141:1-20, Exh. F; Sample Provider Aide Records, Exh. I.

33.     Defendants did not retain complete time records for all employees, including Schedule A home health aides, prior to September 17, 2016. *See* Answers to Interrogatories Nos. 4 and 12, Exh. C; WHI Robert Declaration at ¶ 15, Exh. O. Said records were discarded or destroyed around the time this lawsuit was filed. *See* Corp. Rep. Dep. Trans. 131:14-22, Exh. F.

34.   The individuals listed in Schedule A attached to the Amended Complaint worked for Defendants at some point between October 6, 2015 and October 1, 2017. *See* Stipulations at ¶ 7, Exh. A; Answers to Interrogatories Nos. 5 and 6, Exh. C; Robin Wright Dep. Transcript 106:21-22, 102-12, Exh. E.

35.   The individuals listed in Schedule A worked in excess of forty hours in any given workweek. *See* Answers to Interrogatories Nos. 2, 4, and 12, Exh. C; Robin Wright Dep. Transcript 189:19-22, 235:5-7, Exh. E; Payroll Records, Exh. N; Employee Statements, Exh. H. They did so at the direction of AHP. *See* Corp. Rep. Wright Dep. Tran. 190:4-15, Exh. F.

36.  The parties entered into a Tolling Agreement which provided that all statutes of limitation shall be tolled beginning on December 21, 2017 until and including March 30, 2018, a total of 100 days ("The Tolling Period"). *See* Tolling Agreement, Exh. J.

37.  Between October 6, 2015 and October 1, 2017, AHP paid those individuals listed in Schedule A their straight, hourly rate for hours worked, including hours worked over 40 in a workweek. *See* Stipulations at ¶9, Exh. A Answers to Interrogatories No. 12, Exh. C; Responses to Request for Admissions No. 11. Exh. D; Robin Wright Dep. Transcript pg. 159:1-2, Exh. E. Defendants did not consult with an attorney to determine whether their compensation and overtime policies, which were in effect between October 6, 2015 and October 1, 2017, complied with the FLSA. Corp. Rep. Wright Dep. Tran. 153:3-14, Exh. F.

38.  Defendants knew they were responsible for paying overtime, but still did not to pay the overtime premium. Answers to Interrogatories No.1, Exh. C; Employee Handbook, Exh.K and Board Meeting Minutes, Exh. L. Minutes from a October 1, 2014, AHP board meeting expressly state: "Effective 1/1/2015 requirement to pay all companions, [home health aides], CNA's overtime…Schedules will be changed to accommodate the 40 hour work week requirement."). Board Meeting Minutes, Exh. L.

39.  Defendants did not consult any personnel within the Department of Labor to determine whether their compensation and overtime policies, which were in effect between October 6, 2015 and October 1, 2017, complied with the FLSA. Corp. Rep. Wright Dep. Transcript 153:16-22, Exh. F.

II.  **Factual Background**

AHP is a home health care firm that provides skilled home health care services in consumer's private residences. Access Home Care is located at 9218 Centreville Road,

Manassas, VA 20110. *See* Undisputed Facts at ¶2.  It has been in business since 2010. *See also* Wright Dep., Tr. at 38:13 (identifying the formation date of corporation), Exh. E. Since at least October 6, 2015, Defendant AHP has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, in that Defendant Access Home Care has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and Defendant Access Home Care has annual gross volume of sales made or business done of not less than $500,000.00. *See* Undisputed Facts at ¶6. Further, Defendants' employees have regularly used goods and supplies from states other than Virginia, such as insurance documents, office and medical supplies. *See* Undisputed Facts at ¶4.

Defendant Robin Wright is the President, Administrator, and sole owner of AHP. *See* Undisputed Facts at ¶5. She maintained 100% ownership in the company during the relevant period of investigation. *See id.* at ¶5. During the relevant period of investigation, Defendant Wright had the ability to hire and fire employees, supervise and control employees' work schedules, and determine the rate and method of pay for employees. *Id.*  Defendant Wright also drafted, implemented and imposed AHP's payroll policies. *Id*; *see also* Board Meeting Minutes, Exh. L.

Defendant employed the individuals listed in Schedule A between October 6, 2015 and October 1, 2017. *See* Undisputed Facts at ¶ 13.These employees worked as home health aides and performed the work of personal care aides, nursing assistants, nursing aides, certified nursing assistants, and licensed practical nurses. Between October 6, 2015 and October 1, 2017, Defendants failed to pay the Schedule A employees the overtime premium rate when those

individuals worked in excess of 40 hours during a workweek. *See* Undisputed Facts at ¶38. Instead, Defendants paid these employees straight time for all hours worked. *See* Undisputed Facts at ¶¶ 7 and 37. Defendants' violations of Section 7 of the Act are evident from Defendants' own payroll and time records. *See e.g.*, Payroll Records, Exh. N.

Additionally, Defendants failed to maintain records in accordance with Section 11(c) of the FLSA by not keeping or preserving records total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation, and the total premium pay for overtime hours. *See* Undisputed Facts at ¶33.

Defendants have not offered any evidence that they acted in good faith when they violated the Act. Defendants concede they did not consult an attorney or the Department of Labor to determine whether their compensation and overtime policies complied with the FLSA. *See* Undisputed Facts at ¶¶ 37 and 39. Defendant Wright determined the rate and method of pay for the employees in Schedule A. *See* Undisputed Facts at ¶5. Indeed, Defendant Wright admits she understood the law required her to pay time and a half for overtime. *Id.*; *see also* Wright Dep., Tr. 146:6-10, Exh. E, (stating the employee works from our work period Sunday through Saturday. If they work over 40 hours in that workweek, they will be paid at a rate of time and a half, timing their base rate plus half of that rate for all hours worked over 40). In fact, Defendants paid similarly situated employees, over whom they exerted the same level of control, the required overtime premium. *See* Undisputed Facts at ¶¶ 8 and 10. Yet, Defendants paid straight time for overtime hours for a period of over two years in direct violation of the FLSA to other home health aides. *See* Undisputed Facts at ¶7.

III.   **Summary Judgment Standard**

Summary judgment is warranted if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Accordingly, summary judgment will be granted unless a reasonable fact-finder could return a verdict for the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908 (9th Cir. 2003), *cert. denied* 541 U.S. 1030 (2004).

A party opposing a properly supported motion for summary judgment may not rest on unsupported denials, but must respond with affidavits or other evidentiary materials as provided in Rule 56(e). *Disney v. Entenmann's, Inc.*, No. Civ. H-99-2247, 2000 WL 1721793, at *4 (D. Md. Nov. 17, 2000) (citation omitted). The non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler v. Walmart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 522 (D. Md. 2004) (citation omitted).

## IV.   **Argument**

Plaintiff has met his burden and is entitled to judgment as a matter of law with regard to Defendants' violations of Section 7 of the FLSA, Defendant Wright's status as a 3(d) employer, the amount of back wages owed, and the Secretary's entitlement to an equal amount of liquidated damages. Plaintiff is also entitled to judgment as a matter of law regarding Defendants' failure to

keep records in accordance with Section 11(c) of the Act and the Secretary's entitlement to injunctive relief.

### A. Defendants' employees are covered under the Act because they were employed by an enterprise engaged in commerce or in the production of goods for commerce, within the meaning of the Act.

To be subject to the FLSA's overtime provisions, an employer must be an "enterprise" engaged in commerce. 29 U.S.C. § 207(a)(1). The undisputed facts establish that Defendants' business activities are related and performed through unified operation or common control for a common business purpose, constituting an enterprise under 29 U.S.C. § 203(r). *See* Undisputed Facts at ¶¶ 6,8,14. Their employees also engaged in commerce during the relevant period of investigation. *See* Undisputed Facts at ¶3; *see also* Wright Dep., Tr 19: 3-5, Exh. E. (stating the company provides services to individuals in their homes, personal and skilled services.") Additionally, Defendants admit that AHP had an annual gross volume of sales made or business done of no less than $500,000.00 for each of the years covered by the period of investigation. *See* Undisputed Facts at ¶6.Therefore, Defendants are subject to the requirements of the FLSA.

### B. Defendant Wright is a 3(d) employer and individually liable for all violations.

There are no material facts in dispute regarding Defendant Robin Wright's status as a 3(d) employer. *See* Undisputed Facts at ¶5; *see e.g.* Wright Dep., Tr. 38:11-22, Exh. E. (stating "the director of nursing oversees all the nurses that are under an RN and oversees the aids. The director puts together plans." A person who acts directly or indirectly in the interest of an employer in relation to an employee may be subject to individual liability under the FLSA. 29 U.S.C. § 203(d). Defendant Robin Wright had the ability to hire and fire employees, and she supervised and controlled employees' work schedules, and determined their rates and methods of pay. *See Id.; See, e.g., Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983); *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).

During the relevant period of investigation, Defendant Wright was the president of AHP and maintained 100% ownership in the company, further supporting a finding that she is a 3(d) employer. *See* Undisputed Facts at ¶5; Wright Dep., Tr. 31:18-20, Exh. E. (stating Q: And what percent ownership do you, Robin L. Wright, have in At Home Personal Care? A: 100."); *See, e.g., Donovan*, 712 F.2d 1509, 1514 (1st Cir. 1983) (CEO of a corporation who has significant ownership interest in it, controls significant functions of business, determines salaries and makes hiring decisions qualifies as an employer under the FLSA); *accord, U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775, 778 (6th Cir. 1995). Therefore, Defendant Wright meets the definition of an employer under Section 3(d) of the Act and should be held jointly and severally liable for Defendants' violations of the Act.

**C.    Defendants violated Section 7 of the FLSA by failing to pay employees time and a half for all hours worked over 40 in a workweek.**

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined minimum hours.  29 U.S.C. § 207(a)(1) (requiring that the covered employers pay employees at least one-and-a-half times the regular rate for hours worked in excess of forty hours per week).  The FLSA authorizes the DOL to bring an enforcement action against an employer for violation of its hour and wage provisions.  *See* 29 U.S.C. § 216.  The FLSA is designed to ensure that each employee covered by the Act receives not only a "fair day's pay for a fair day's work", but—as importantly—is protected from "the evil of overwork as well as underpay."  *See Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578 (1942). The Court has consistently construed the Act "liberally to apply the furthest reaches consistent with congressional direction." *Alamo Found'n v. Secy. of Labor*, 471 U.S. 290, 296 (U.S. 1985) (citing *Mitchell v. Lublin, McGaughy & Associates*, 358 U.S. 207, 358 U.S. 211 (1959) (applying

the economic realities test in determining FLSA applied to employees who received benefits in lieu of wages)).

Defendants admit they failed to pay the employees in the Schedule A the overtime premium rate from October 6, 2015 through September 17, 2016 in violation of Section 7 of the Act. *See* Undisputed Facts at ¶ ¶ 7 and 37. Section 7 of the FLSA requires an employer to pay its employees a premium rate of pay for any hours over forty worked in a workweek:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours **unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed**.

29 U.S.C. § 207(a)(1) (emphasis added); *see also Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997). Defendants violated this provision of the Act because it paid home health aides straight time, i.e., their normal hourly rate, for hours worked over forty in a workweek rather than one and one-half their regular rate of pay. Undisputed Facts at ¶7.  Indeed, Defendants' overtime violations are apparent on the face of Defendants' records, which consistently show that employees worked more than 40 hours in a workweek and that Defendants paid said employees their straight time rate for all hours worked. Undisputed Facts at ¶¶ 7 and 37.

The facts on this issue are not in dispute and the record does not allow for any other conclusion than Defendants violated Section 7 of the Act.

**D.      Defendants owe $67,519.29 in back wages as a result of their violations of Section 7 of the Act.**

As a result of Defendant's violations of Sections 7 of the Act, Defendants owe back wages totaling $67,519.29 to the 44 employees listed in Schedule A of Plaintiff's Amended

Complaint. Notably, Plaintiff's back wage calculation is based on Defendants' own records, including timesheet summaries and payroll summaries, as well as unrefuted employee statements.

In instances where an employee worked more than 40 hours in a work week and AHP paid straight time for overtime, Wage and Hour Investigator Rhonda Roberts first identified each employee's regular rate. For overtime earned between September 18, 2016 through October 1, 2017, Investigator Roberts calculated employees' regular rates and determined their overtime hours worked based on AHP's timesheet summaries and payroll summaries. WHI Roberts Decl. at ¶ 12, Exh. O. To identify the regular rate of pay, Investigator Roberts divided the compensation the employee received during the workweek by the number of hours the employee worked. *Id*. She then multiplied that regular rate by one-half to determine the employees' overtime premium rate, i.e., the rate the AHP and Ms. Wright should have paid the employees for their overtime hours. *Id.* Investigator Roberts then multiplied the overtime premium by the number of hours the employee worked in excess of 40 to determine the amount of compensation due. *Id.* She subtracted the amount of overtime due to each employee from the amount of compensation AHP paid employees for those overtime hours, to determine the total amount of back wages owed to the employee. *Id. See* 29 C.F.R. § 778.100.

For example, Shiqesh Lewis, a home health aide, received a rate of $10.00 per hour during the relevant period of investigation. *See* Summary Un Records, Exh. N; Sample Provider Aide Records, Shiqesh Lewis, Exh. I. During workweek ending December 10, 2016, Shiqesh Lewis, worked a total of 62 hours. Her gross pay for this pay period was $620.00 (62 x $10.00=$620.00), meaning she was paid the same hourly rate for each hour she worked. *See* Shiqesh Lewis Computations, Exh.M-1; *see generally* WHI Roberts Decl. Exh. O. Of the 62

hours she worked that week, 22 of those hours should have been paid at the overtime premium rate. *Id*. Because Defendants paid straight time for overtime, Shiqesh Lewis is owed the difference between what AHP paid her and the proper overtime premium rate.  In other words, Defendants owe the employee half of his regular rate of pay for all hours worked in excess of 40. Investigator Roberts used the same formula to calculate the overtime due to all employees listed in Schedule A.  *Id*.

Notably, between October 6, 2015 and September 17, 2016, AHP and Ms. Wright did not maintain time records of the hours employees worked each day and each workweek. *Id.* at ¶ 15. When calculating back wages due for AHP and Ms. Wright's overtime violations during that period, Investigator Roberts relied upon AHP's payroll summaries, which included the number of hours employees worked during the two week pay period. *Id.* To calculate back wages owed to employees during this period, Investigator Roberts multiplied each employee's regular rate by 1.5, and multiplied the resulting overtime premium rate times the number of hours worked over 80 in a two week period, and then subtracted the amount of compensation AHP paid employees for those overtime hours during the same period. *Id. See* 29 C.F.R. § 778.100.

Based on the above-explained computations, Defendants owe 44 employees $67,519.29 in back wages. *See* Summary of Unpaid Wages, Exh. P.

**E.  Defendants are liable for liquidated damages.**

Defendants are liable for back wages, as well as an equal amount in liquidated damages. Section 16(b) of the Act provides that "[a]ny employer who violates the provisions of [S]ections 6 and 7…shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation…and an additional equal amount in liquidated damages." 29 U.S.C. § 216(b).  Liquidated damages are "mandatory" and are the

"norm" for FLSA violations.  *See Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997).

Defendants bear the burden of proving that liquidated damages should not be awarded. *See Perez*, 650 F.3d at 375, *citing Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985).  Only where "the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA may the court exercise its discretion to deny liquidated damages. *See* 29 U.S.C. §260; *Perez*, 650 F.3d at 375; *Mayhew*, 125 F.3d at 220. Indeed, Defendants must present "plain and substantial" evidence that they acted with subjective good faith and objective reasonableness to assert a good faith affirmative defense. *See* 29 U.S.C. § 260; *see also Richard, et al. v. Marriott Corp.*, 549 F.2d 303, 306 (4th Cir. 1977); *Lockwood v. Prince George's Cty., Md.*, 58 F. Supp. 2d 651, 657 (D. Md. 1999), *aff'd*, 217 F.3d 839 (4th Cir. 2000).  To meet its burden, an employer must affirmatively establish a subjective defense; i.e., that the employer acted in good faith by taking active steps to ascertain the dictates of the FLSA and then moved to comply with them.  The employer also must establish an objective defense; i.e., that there were reasonable grounds for believing the employer was in compliance with the Act.  *Lockwood*, 58 F. Supp. 2d at 658; *Anderson*, 2007 WL 2819533, at *2; *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982); *see also* 29 C.F.R. § 790.22.  This burden "is a difficult one to meet, however, and '[d]ouble damages are the norm, single damages the exception....'" *Lockwood*, 58 F. Supp. 2d at 657; *Mayhew*, 125 F.3d at 220.

To satisfy the subjective prong of the good faith defense, Defendants must prove they investigated their potential liability under the FLSA before implementing a pay practice that is later found to be in violation of the FLSA. *See Quirk v. Baltimore Cty., Md.*, 895 F. Supp. 773,

788 (D. Md. 1995) ("Good faith requires some investigation of potential liability. An employer cannot simply remain blissfully ignorant of FLSA requirements.") (citations and internal quotation marks omitted); *accord, Fraternal Order of Police, Lodge 3 v. Baltimore City Police Dep't*, No. Civ. B-92-1066, 1996 WL 1187049, at *17 (D. Md. Oct. 30, 1996). Defendants cannot meet this burden – in fact they have not even attempted to meet this burden. Defendants did not receive or seek any guidance from the Department of Labor to determine whether their compensation and overtime policies complied with the FLSA. Undisputed Fact at ¶39. Defendants did not seek the advice of an attorney with regard to their compensation and overtime practices. Undisputed Fact at ¶37. Further, the record shows Defendants implemented compensation practices they knew violated the FLSA. Defendant Wright admits she understood the law required her to pay time and a half for overtime. *Id.*; *see also* Wright Dep., Tr. 146:6-10, Exh. E, (stating the employee works from our work period Sunday through Saturday. If they work over 40 hours in that workweek, they will be paid at a rate of time and a half, timing their base rate plus half of that rate for all hours worked over 40). In fact, Defendants paid similarly situated employees, over whom they exerted the same level of control, the required overtime premium. *See* Undisputed Facts at ¶¶ 8 and 9. October 1, 2014, board meeting notes further confirm AHP's knowledge of its obligations under the Act. Those notes state in pertinent part: "Effective 1/1/2015 requirement to pay all companions, [home health aides] … overtime…Schedules will be changed to accommodate the 40 hour work week requirement.") Board Meeting Minutes dated October 1, 2014, Exh. M. Yet Defendants' payroll records and employee statements confirm Defendants continued to pay straight time for hours worked over forty in a workweek for a period of over two years. *See* Undisputed Facts at ¶37.

Defendants also cannot satisfy the objective prong of the good faith test. Defendants have not offered any evidence in support of the objective prong. Certainly, Defendants' knowing and continued violation of the Act wholly disputes any contention that that there were reasonable grounds for believing AHP was in compliance with the Act

Defendants have no evidence to support a good faith defense. There is no dispute that Defendants did not take any affirmative actions to ensure compliance with the Act. Nor could any reasonable employer conclude that Defendants' improper pay practices, which included paying straight time for overtime, were FLSA-compliant. Accordingly, Defendants are liable for $67,519.29 in liquidated damages.

**F.      Defendants failed to maintain records in violation of Section 11 of the Act.**

Defendants failed to maintain records in accordance with Section 11(c) of the FLSA, which requires employers subject to the provisions of the Act to make, keep, and preserve records of their employees' wages, hours, and other conditions and practices of employment, as prescribed by the Secretary's regulations. 29 U.S.C. §211(c). Defendants admit they failed to maintain records reflecting (1) employees' total daily or weekly straight-time earnings and (2) the total overtime pay for the workweek. 29 C.F.R. § 516.2(a); Undisputed Facts ¶33. Therefore, there are no material facts in dispute as to Defendants' violations of Section 11 of the Act.

**G.      Defendants' violations of the FLSA warrant injunctive relief.**

The FLSA authorizes district courts to issue injunctive relief "restrain[ing] violations" of Sections 206 and 207 upon a showing of cause. 29 U.S.C. § 217. Granting injunctive relief is within the sound discretion of the court. *See Martin v. Funtime,* 963 F.2d 110, 113 (6th Cir. 1992). In determining whether to issue an injunction under the FLSA, courts consider (1) the employer's previous conduct, (2) its current compliance (or noncompliance), and (3) the

dependability of any assurances that it will comply with the FLSA in the future. *Id.* at 114; *see e.g., Reich v. Petroleum Sales,* 30 F.3d 654, 657 (6th Cir.1994) (noting the imposition of an injunction is not punitive and does not impose a hardship on the employer because it requires the employer to comply with the FLSA, which is already required). A court should enjoin an employer against the commission of future violations when there is a finding of clear violations of the FLSA. *See McComb v. Homeworks' Handicraft Co–op*, 176 F.2d 633 (4th Cir. 1949) (overturning a district court's denial of injunctive relief against Defendants that willfully violated the FLSA). There are clear violations in the present case. Indeed, Defendant Wright admitted during both the Department of Labor's investigation and her deposition that she knew she was responsible for overtime, but she decided not to pay the overtime premium.

A court should also grant prospective injunctive relief even if the employer is in present compliance, unless it is convinced that there is not a reasonable probability of a recurrence of the violations. *See, e.g.*, *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980); *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir. 1958)*; Lenroot v. Kemp*, 153 F.2d 153, 156 (5th Cir.1946); *Reich v. Cole Enter., Inc.*, 901 F. Supp. 255, 260 (S.D. Ohio 1993); *Brock v. Hamad*, No. 86-757-CIV-5, 1987 WL 46573, at *4 (E.D.N.C. Nov. 25, 1987). Here, there is no evidence AHP is compliant with the FLSA. Regardless, the probability that Defendants will continue to violate the Act is high due to the nature of violations and Defendants' knowing and continued violation of the Act as described above.

In this case, Defendants' past conduct and overtime violation justify an injunction against future violations of the provisions of the FLSA. Defendants' indifference to the requirements of Act and failure to ensure compliance makes injunctive relief against the Defendants justified and necessary. An injunction for Section 7 violation is necessary to protect against future violations.

Moreover, such relief would not be burdensome to Defendants; rather, injunctive relief requires only that Defendants not violate the law. *See Hodgson v. Approved Pers. Serv.*, 529 F.2d 760, 764 (4th Cir. 1975) ("An injunction in [an FLSA] case is not a burdensome thing; it simply requires the employer to obey the law.") Accordingly, injunctive relief against Defendants is warranted.

**V.**    **Conclusion**

For the foregoing reasons, the Court should grant Plaintiff's Motion for Summary Judgment in its entirety and award back wages and liquidated damages totaling $135, 038.58 to the 44 employees identified on the Schedule A and grant Plaintiff's request for injunctive relief.